[ No. 891.]

## MARIA ESTIS, RESPONDENT, v. SOL. SIMPSON, APPELLANT.

PLEADINGS—KNOWLEDGE IMPARTED BY.—A party cannot be presumed to be apprised of any facts by the pleading of his adversary except those stated therein and such others as follow therefrom.

CONSIDERATION OF NOTE GIVEN BY AGENT—WHEN SUFFICIENT.—Where an agent receives money from his principal and loans it out upon mortgage taken in his own name, and afterwards, for the purpose of securing the principal for the loan, gives his own note, and as a defense to this note claims that it was given without consideration: *Held*, that if the agent had absolutely sold and assigned the mortgage to a third party and appropriated the money received thereby, to his own use, this would constitute a sufficient consideration to uphold the note as a cause of action, to the extent of the principal's proportion of the whole value of the mortgaged property.

APPEAL from the District Court of the Second Judicial District, Washoe County.

The facts are sufficiently stated in the opinion.

*Boardman & Varian*, for Appellant.

Upon a review of the facts, counsel claimed that : the court below had no legal right to grant a new trial; that it had abused its discretion and that its order ought to be reversed. (3 Graham and Waterman on New Trials, 874–77, 894–98, 962–64, 931–37, 1016–28, 1067–71; *Burr* v. *Palmer*, 23 Vt. 244; *Jackson* v. *Roe*, 9 John 77; *Cummins* v. *Walden*, 4 Blackf. 307; *Goins* v. *State*, 41 Tex. 334; *Martin* v. *Garver*, 40 Ind. 351; *Smith* v. *Williams*, 11 Kan. 104; *Heady* v. *Fishburn*, 3 Neb. 263; *Wallace* v. *Tumlin*, 42 Ga. 462; *Savoni* v. *Brashear*, 46 Mo. 345; *Ames* v. *Howard*, 1 Sumner, 482; *Palmer* v. *Fisk*, 2 Curtis C. C.

14; *Brooks* v. *Douglass*, 32 Cal. 211; *Schelhous* v. *Bull*, 29 Id. 605; *Armstrong* v. *Davis*, 41 Id. 499; *Price* v. *Brown*, Strange, 691; *Cooke* v. *Berry*, 1 Wilson, 98; *Harrison* v. *Harrison*, 9 Price, 89; *Herman* v. *Mason*, 37 Wis. 273.)

*Robert M. Clarke*, for Respondent.

I. The judgment should have been for the plaintiff upon the pleadings and proofs. The taking of the note and mortgage in Ward's name was a conversion, and Simpson immediately became indebted in the whole amount.

II. The new evidence was material, and the order granting a new trial should be affirmed for that reason.

*Thomas E. Hayden*, also for Respondent.

A written instrument cannot be varied, altered, explained or amended, or other terms engrafted upon it by verbal agreements made contemporaneously with or before the execution of such instrument. (Greenl. on Ev. vol. 1 [Red. Ed.] § 275; Keats' Com. vol. 2, 731–32; Chitty on Cont. 105; Story on Notes, Lees, 291, 410; *Travis* v. *Epstein*, 1 Nev. 116; *Feusier* v. *Sneath*, 3 Nev. 125–28; 2 Pars. on Notes and Bills, 501–13; Id. 523.

By the Court, LEONARD, J.:

This is an action upon a negotiable promissory note for two thousand two hundred dollars, with interest at two per cent. per month, dated January 22, 1876, and by its terms due and payable August 10, 1876. Upon the note there is an indorsement in the handwriting of defendant, as follows: "Paid on the within note, six hundred dollars, July 22, 1876. Simpson." Defendant, both by his answer and at the trial, admitted the execution and delivery of the note to plaintiff, but denied that he paid thereon six hundred dollars or any other sum, or that there was anything due thereon. His defense is entire want of consideration. The allegations contained in the answer in support of this plea are in substance as follows: That on the twenty-second day of January, 1873, defendant was the duly constituted agent of plaintiff in Virginia city, in this state, and as such agent

had general supervision and control of all of plaintiff's
financial affairs and general business, and full and complete
management thereof in said city and state; that as such
agent he had special authority to invest and loan, in his own
name or otherwise, upon such terms and conditions as he
should deem advisable, all moneys of plaintiff that should
from time to time remain in his hands, as and for the
special use and benefit of plaintiff; that on or about said
day, he had in his hands, as such agent, the sum of one
thousand five hundred and fifty dollars belonging to plaint-
iff; that he then deemed it advisable to loan, and did loan,
said sum belonging to plaintiff, together with two hundred
and fifty dollars of his own money, to one F. A. Cox, for
the period of two years, at the rate of two per cent. per
month interest, and received Cox's note and mortgage upon
real property in Virginia city to secure the same; that after
the expiration of two years, and while he was still plaintiff's
agent as before stated, he deemed it advisable to renew,
and did renew, said note and mortgage, for the term of one
year thence next ensuing; that Cox had failed to pay any
part of the amount due; that a decree foreclosing the mort-
gage had been entered in the first judicial district court in
Storey county; that an order of sale had been made, and
proceedings were pending to fully foreclose and satisfy said
mortgage, all of which had been and was known to plaintiff;
"that on the twenty-second day of January, 1876, for the pur-
pose of securing the plaintiff against all and singular the
acts of defendant in the premises, and that defendant
should well and truly account to plaintiff for her proportion
of the moneys that should be collected from the sale of the
mortgaged property, or from Cox, and not otherwise, and
while the foreclosure proceedings were pending, the defend-
ant made and delivered the promissory note set out in the
plaintiff's complaint;" that said note was and is wholly
without consideration to defendant, and was not intended
as evidence or acknowledgment of any debt due from de-
fendant to plaintiff, all of which plaintiff well knew; that
the six hundred dollars indorsed upon the note was ad-
vanced to plaintiff for the purpose of relieving her necessi-

ties, upon the understanding and agreement that the same sum should be retained by defendant from the moneys to be collected upon the note and mortgage; that such advance was not made as a payment or acknowledgment of indebtedness; that since the loan to Cox defendant had had no moneys of plaintiff in his hands or under his control.

This action was commenced September 27, 1876. It was tried by the court, without a jury, January 22, 1877, and the findings and judgment were substantially in accord with defendant's answer. Defendant had judgment for his costs. Plaintiff moved for a new trial on the following grounds: Accident and surprise; newly discovered evidence; insufficiency of evidence to justify the decision of the court, and errors in law occurring at the trial.

The court ordered a new trial, upon the grounds of accident and surprise, and newly discovered evidence.

Defendant appeals from the order. Defendant's counsel insist that the evidence given on the trial shows there was no sufficient consideration for the note in suit to sustain an action thereon; that the newly discovered evidence set out in the affidavit for a new trial could not change the result first arrived at by the decision of the court; that by the answer plaintiff was given full notice of the defense to the note as well as of the existence of the facts set up in the affidavit, and that, consequently, she should have produced at the trial the evidence now claimed to be newly discovered.

We do not think that either the answer or the evidence introduced at the trial, gave notice to plaintiff, or put her upon track, of many material facts stated in the affidavit as newly discovered evidence. Plaintiff had notice that defendant claimed the note to be void for want of consideration; that defendant as plaintiff's agent loaned the money about January 22, 1873, to Cox for two years, and in his own name received a note and mortgage for plaintiff's use and benefit; that at the expiration of two years he renewed the Cox note and mortgage for the period of one year; that a decree foreclosing said renewed mortgage had been entered in the proper court, and an order of sale made. Plaintiff

was notified by defendant's testimony at the trial, that the property had been sold under the order of sale above mentioned, and that the time for redemption had expired. But the affidavit for a new trial shows, that on or about September 19, 1873, Cox executed and delivered to defendant the note and mortgage for the sum of one thousand five hundred and fifty dollars; that defendant assigned the same to O. W. Ward, February 10, 1875; that on April 13, 1875, Cox and wife executed to one Douglass notes and mortgages upon the same property for one thousand eight hundred and thirty-six dollars, in consideration of the satisfaction of the former note and mortgage given to defendant; that on the eighteenth day of September, 1875, the last notes and mortgage were assigned by Douglass to Ward; that on the fifteenth day of March, 1876, Ward, in consideration of one thousand eight hundred dollars, to him in hand paid by C. Derby, the receipt of which was duly acknowledged by Ward, sold and assigned said notes and mortgage absolutely to Derby, for his use and benefit; that on March 15, 1876, having power so to do, Derby brought suit of foreclosure in Ward's name, and on June 28, 1876, obtained decree and judgment for two thousand six hundred and eighty-three dollars with order of sale; that Derby caused the property to be sold; that he purchased it at sheriff's sale for the sum of two thousand eight hundred and fifty-three dollars, and on the twenty-fourth of January, 1877, received the sheriff's deed therefor, when he became, and now is, the absolute owner thereof.

Plaintiff was notified by the answer, that defendant renewed the first note and mortgage for one year. A fair construction of that language, in this connection, is that the second notes and mortgage were given by the same party to the same party, that is, by Cox to the defendant. It was not notice that they were given by Cox and wife to Douglass. Plaintiff was also informed by the answer, that such *renewed mortgage* was foreclosed, not a mortgage from Cox and wife to Douglass, and by him assigned to Ward. But more than all, plaintiff was not notified that on the fifteenth day of March, 1876, months before the commencement of

this action, Ward, by an instrument under seal, in consideration of one thousand eight hundred dollars, by him received of Derby, sold and transferred the notes and mortgage, absolutely, to the latter, as appears *prima facie* to have been the case, both from plaintiff's affidavit and exhibit D made a part thereof. Nor did she have notice that Derby, on the twenty-fourth day of January, 1877, received the sheriff's deed of the mortgaged property. Plaintiff cannot be presumed to have been apprised of any facts by the answer, save those that were stated therein, and such others as naturally flowed or followed from the ones set out.

We think she had no notice of the facts last stated, and it becomes necessary to ascertain whether they are important or not. They are of the greatest importance to plaintiff, under the finding of the court that the note sued on was not given in consideration of indebtedness found due upon settlement, if, being proven to the satisfaction of the court or jury, they would show a sufficient consideration for the note to sustain this action, regardless of such settlement.

Does the newly discovered evidence, if true, show a sufficient consideration for the whole amount of the note or any part thereof? As to the consideration necessary in case of an action upon a note, it is stated in Byles on Bills, p. 228, that "the same general rules as apply to the nature of the consideration for other simple contracts, are also applicable to the various contracts on a bill or note;" that is to say, there must have been some benefit to the maker, or some detriment to the payee. As we have seen, defendant alleges in his answer that he executed and delivered the note in question "for the purpose of securing plaintiff against all and singular the acts of defendant in the premises, and that defendant should well and truly account to plaintiff for her proportion of the moneys that should be collected from the sale of the mortgaged property, or from said Cox, and not otherwise." If plaintiff's affidavit be true, it is evident from defendant's answer, that the note was given to secure plaintiff against the very acts of defendant which were done, as well as those which were not done, by him. Defendant testified that the second mortgage had been

foreclosed, and that he expected to get the money out of it in a few weeks or months, when he would pay it to plaintiff; that he had no interest in it except to the extent of two or three hundred dollars. Under such circumstances, it was incumbent upon him to show at least, that he still held the note and mortgage, and was in condition to control the proceeds of sale and to hand them over to plaintiff. There was, however, no such proof; but, on the contrary, the newly discovered evidence shows, if true, that months before this action was brought, the notes and mortgage were the property of Derby solely; that thereafter defendant had no control over them, and that neither plaintiff nor defendant had any property in them or any interest in the proceeds of the mortgaged premises; that at the time the new trial was granted, Derby was the absolute owner of the mortgaged property. Admitting it to be true that Ward acted as agent of defendant in getting the second notes and mortgage in the name of Douglass, and in having them assigned by the latter to himself, and that at the time the note sued on was executed by defendant, he had received nothing from Cox or upon the mortgage; that he had not at that time placed the notes and mortgage or his interest therein beyond his control; and admitting, also, for the purposes of this decision, that the note in question was not given upon settlement as claimed by plaintiff, still, if it be true that at the time this action was brought, or even at the date of trial, defendant, by himself or Ward, had disposed of the note and mortgage, and for a valuable consideration received from Derby, had sold and assigned absolutely to the latter, all interest in and lien upon the mortgaged property, thus rendering it impossible for him to foreclose, or cause to be foreclosed, the mortgage for plaintiff's use or benefit, or otherwise to perform the duties of his trust, we have no hesitation in saying there was a sufficient valuable consideration for the note sued on, to the extent of plaintiff's proportion of the whole value of the mortgaged property. Let us admit, for the sake of the argument, that at the time the note sued on was given, Ward held the Cox note and mortgage for plaintiff; that the latter,

at that time, was the real owner of both, and that defendant then owed plaintiff nothing. But let it be admitted further, that before this action was brought, and subsequent to the date of the note sued on, given to secure plaintiff against her liability of loss, as stated in the answer, defendant converted to his own use the eighteen hundred dollars paid by Derby for the note and mortgage, or deprived plaintiff of any benefit from, or interest in, the mortgage, by an absolute sale and assignment thereof.

Under such circumstances we think that plaintiff's liability of loss on account of defendant's possible misfeasance, was a sufficient consideration to uphold the note as a cause of action when it was executed, to the extent of plaintiff's proportion of the whole value of the mortgaged property. "To that extent," as was said in *Husseltine* v. *Guild*, 11 N. H. 394, "the consideration, certainly, has not failed. On the contrary, it has been perfected, if that term is admissible." The case just cited was an action commenced June 13, 1838, on a promissory note dated November 18, 1835, for three thousand nine hundred and sixty-three dollars and twelve cents payable to plaintiff or order on demand. At the trial defendant Guild was defaulted, but subsequent attaching creditors were permitted to come in and defend the suit. It was admitted that Guild executed the note described in the declaration; but evidence having been introduced in the defense tending to show that the note might be held in some measure for the benefit of Guild, the plaintiffs offered to prove that on the fourth day of January, 1832, Guild was appointed guardian of one Searle, a minor, and on the same day gave a bond to the judge of probate, in the penal sum of ten thousand dollars, with the plaintiffs as his sureties, conditioned well and truly to discharge the office of guardian, to render a true account of such estate as should come to his hands, and to pay and deliver what should remain in his hands to Searle, when of full age, or otherwise, as the probate court should lawfully direct; that Guild afterwards, as guardian, received money to the amount of the note, and for which he was liable as guardian, and the plaintiffs as his sureties, at the time of the

commencement of the suit; that the note was taken for the purpose of indemnifying the plaintiffs against their liabilities on the bond, and they engaged when the note was given, to save Guild harmless from any liability as guardian, to the extent of the money which might be recovered on the note; that Searle came of age January 3, 1839, and that on the fourth day of the same January, the plaintiffs paid Searle the sum of two thousand dollars, and took his discharge for that sum. The court below rejected the evidence offered, which was held error on appeal, and a new trial was granted. It will be noticed that in that case the note sued on was executed several years after the plaintiffs became liable on the bond, and long before they paid anything, or knew they would be required to pay anything on account of becoming sureties; as in this case, the note in question was given after defendant received plaintiff's money, and hence after plaintiff was liable to sustain loss in case of defendant's misfeasance, but before the note and mortgage were assigned to Derby. In that case the two thousand dollars were not paid by plaintiffs until about six months after they commenced action upon the note, but they were paid before the trial; while in this case the note and mortgage were sold to Derby before plaintiff brought her action, but it seems she was not aware of the sale until after trial. We quote from the opinion of the court:

" The plaintiffs, upon the execution of the note, had in fact no debt against the defendant such as appears on the face of the note to exist; and it is very clear that securities of this kind are not the most appropriate evidences of contracts to indemnify the payee for an existing liability for the maker. * * * A mortgage would undoubtedly better exhibit the true state of the case. But on the other hand, if a mortgage has not been given, justice may be promoted by permitting a surety to take from his principal some obligation upon which he may acquire a lien upon the property of the principal, and provide security for his indemnity in case of need, before he has been compelled to pay the money. And securities for this purpose appear, from the authorities cited, to have been sanctioned in England and

Massachusetts. (*Little* v. *Little*, 13 Pick. 426; *Cushing* v. *Gore*, 15 Mass. 72; 2 D. and E. 104, 105; Id. 640.)

We do not see any solid grounds of distinction where the payee is surety in an administration bond, and where he is surety in some obligation, in terms for the payment of money. The result in both, if enforced against the surety, is to compel him to pay a sum of money. It may, perhaps, be said that the true ground of the defense is want or failure of consideration; for, if there is a sufficient consideration for the promise to pay a sum of money, there is no fraud in executing a note promising to pay it. And if a liability as surety may be held to be a good consideration for a note, the consideration must remain good to the extent of the money which has subsequently been paid upon the liability. In this case the sum of two thousand dollars was paid by the plaintiffs upon the liability before the trial. * * * There is, perhaps, no sufficient objection to holding that an existing, continuing liability as surety for another is such a damage to the party that it will form a sufficient consideration for a promissory note. It is clearly a good consideration for a mortgage, and it has been held a sufficient consideration to sustain an absolute conveyance."

We discover no difference in principle between that case and the one in hand. If the liability of a surety is sufficient to sustain a promissory note, executed long after the liability is incurred, but before any sum is paid, if payment is made by the surety before trial (and the cases holding that doctrine are numerous) much more was the actual giving up of money by plaintiff to defendant for a specific purpose and as a trust, with the liability of loss on account of defendant's misfeasance, a sufficient consideration for a note given to secure plaintiff against such loss. Let us suppose a case. A. employs B. to purchase county scrip, the latter agreeing to buy it, hold it until paid, and then faithfully hand over the proceeds. B. receives one thousand dollars, buys all the scrip he can for the money, and retains it in his possession. For the purpose of securing himself against possible loss on account of the wrongful acts of B., A. takes B.'s note in the sum of fifteen hundred dollars. B. draws

the money on the scrip and retains it. We have no doubt that the consideration of the note would be ample to support an action, and that A. could recover thereon an amount equal to the amount received by B. And that case is the same in principle as this, if plaintiff's affidavit for a new trial is true.

Besides, inasmuch as plaintiff delivered her moneys to defendant, who undertook to invest them, take securities therefor and to account to her for the proceeds of the sale of the mortgaged premises, an action would have lain against him on that bailment, although no note had been given, if he had disposed of the securities for his own use and benefit instead of hers; or if by other gross mismanagement he had lost her money. (Chitty on Cont., vol. 1, p. 42; Story on Bailm., secs. 164, 171 *et seq.*, and 188; 2 Johns. Cas. 92.)

In *Watson* v. *Turner*, Bull. N. P. 147, overseers of the poor, were held liable to an apothecary for his attendance, though not ordered by them, and a subsequent promise by them to pay was held not to be a *nudum pactum*, because they were bound by law to provide for the poor. (*Wennall* v. *Adney*, 3 Bos. & P. 250, note.)

In *Warner* v. *Booge*, 15 Johns. 233, it was held that where a party in suit became entitled to costs from the opposite party, who promised to pay the bill, the promise was founded on a sufficient consideration and would support an action.

After plaintiff delivered her money to defendant, the latter was under a legal obligation to perform the duties of his trust, without the note, and that obligation was a sufficient consideration to uphold the note as a cause of action when it was given, to the extent of plaintiff's loss caused by the misfeasance of defendant; that is to say, if the affidavit for a new trial is true, the consideration of the note in suit is at least sufficient to sustain a recovery to the extent of plaintiff's proportion of the value of the property mortgaged.

We have thus far discussed the question of consideration upon the pleadings, admitted facts and newly discovered evidence, without regard to plaintiff's claim that the note

sued on was given upon full settlement with defendant, concerning which fact the testimony was very conflicting. Upon the new trial, if the court or jury should conclude there was such settlement, and that the note in question was given in consideration of indebtedness found due plaintiff, these facts alone will entitle plaintiff to recover the whole amount claimed. Should the conclusion be against such settlement, then the principles hereinbefore stated will govern the court upon the question of consideration.

Against plaintiff's objections at the trial, defendant was permitted to testify that at the time the note in question was executed, it was given "upon the complete understanding that she (plaintiff) was to get her money out of the mortgage when it was collected, and not before." If such testimony was admissible for any purpose, it was solely as a defense to the consideration. (Pars. Notes and Bills [2 ed.], vol. 1, 523; vol. 2, 501 *et seq.*) In an action upon a negotiable promissory note, a sufficient valuable consideration is at first presumed, and to show a want or failure of the same, the burden of proof is upon the defendant. (Story on Bills of Ex. 209; Pars. Notes and Bills, vol. 1, 175.)

Under the facts pleaded and admitted by defendant, it was incumbent upon him to show either that he had performed the duties of his trust or was in condition to do so, or such facts as excused him from such performance. We fail to perceive how the testimony mentioned proved or tended to prove either fact just stated, or how it in any manner sustained the defense of want of consideration.

In reply to a question asked plaintiff by the court, she testified as follows: "I consider the mortgage and money invested in it as mine; there never was any understanding between defendant and me, by which he was to become the owner of the mortgage and money secured thereby, or become liable on the note; there never was any other consideration for defendant's note, except that he had moneys of mine under his control, loaned out for me." A part of that testimony was apparently opposed to what she had before stated, and was against plaintiff's whole theory

of the case. But however that may be, and presuming that she testified as stated, it matters not who, in her opinion, was the owner of the note and mortgage. She did not know at the trial what is set out in the affidavit, that defendant had previously disposed of the Cox note and mortgage, and thus disqualified himself from performing the duties of his trust. And if she did then consider the mortgage and the money invested as her property, with the light then before her, that fact does not change her legal rights, if her affidavit is true.

The order granting a new trial is affirmed.

BEATTY, J., concurring:

I concur in the order of affirmance, but to sustain the action of the district court I think it quite unnecessary to resort to the newly discovered evidence. The facts alleged in the answer in my opinion do not constitute a defense to the action. So far from showing that there was no consideration for the note, they show that there was a valuable and adequate consideration. The defendant was, according to his own version of the facts, liable to the plaintiff as her trustee. She had a right to hold him accountable in that character, and to demand the proceeds of his investments of her money; and he had a right, if his conduct in her affairs had been without fault, to discharge his obligation to her by turning over the securities in which he had invested her money. But if, instead of settling in that way, he chose to give, and she chose to take, his promissory note for a sum of money less than was actually due her, the validity of such a settlement cannot be questioned. His liability as trustee was thereby extinguished, and he became, in fact as well as in name, the owner of the mortgage and the debt thereby secured. This was a good consideration for the note, and all the answer alleges, and all the defendant's evidence amounts to, is that there was a contemporaneous verbal agreement that the note was not to be paid according to its tenor, but was to be satisfied out of the proceeds of the Cox mortgage. In my opinion, no evidence of any such agreement should have been received or

considered, as its only effect was to contradict the terms of the note.

This view of the case, if correct, is conclusive in favor of the plaintiff, regardless of the weight of evidence upon the disputed facts. I wish to add, however, that in my opinion the finding of the court ought to have been in favor of the plaintiff on the evidence adduced at the trial. The defendant's testimony was in direct conflict with his own written acknowledgments; that of the plaintiff was plain, straightforward and consistent, not only with the written evidence, but with itself. I do not agree with the court that it presents even an apparent inconsistency. The plaintiff had testified clearly and distinctly that the note was given in full and final settlement of all her claims on the defendant by reason of his investments for her. Up to the day it was given she had never heard of the Cox note and mortgage. Defendant had pretended that her money was invested in loans to other parties, and in mining stocks. Three months after the date of the note, defendant for the first time proposed to transfer to the plaintiff the Cox note and mortgage in satisfaction of his note, and she agreed to take it, not because she thought her money was invested in it, but because she feared if she refused to take that she would get nothing.

It was with reference to this agreement, made three months subsequent to the execution of the note sued on, that she gave a woman's opinion that the mortgage and money invested in it were, at the date of the trial, hers. Her further statement that there never was any understanding between the defendant and her by which he was to become the owner of the mortgage and become liable on the note, in the light of her other testimony, means no more than this : That after she first heard of the Cox mortgage in April, 1876, there never was but one understanding in regard to it, and that was that it was to be assigned to her in satisfaction of the defendant's note.